IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ERNEST COLTON, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:12-CV-3584-D |
| VS. | § | |
| | § | |
| U.S. NATIONAL BANK | § | |
| ASSOCIATION AS TRUSTEE FOR | § | |
| THE GSAMP TRUST 2006-HE2, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

The instant motion to dismiss this lawsuit arising from a real estate foreclosure presents, *inter alia*, issues concerning whether there was compliance with the pooling and servicing agreement ("PSA") that governed a securitized mortgage. Such issues are typically pretermitted on the ground that the plaintiff lacks standing to challenge compliance with the PSA. In this case, the court will assume *arguendo* that the plaintiff has standing. Even so, because he has failed to state a claim on which relief can be granted, the court grants defendants' motion to dismiss, although it also grants the plaintiff a final opportunity to amend his complaint and state a claim, if he can.

I

This is an action by plaintiff Ernest Colton, Jr. ("Colton") against defendants U.S.

Bank National Association ("U.S. Bank"),[1] as trustee for the GSAMP Trust 2006-HE2

Mortgage Pass-Through Certificates, Series 2006-HE2 (the "Trust"), and Ocwen Loan

Servicing, LLC ("Ocwen") arising from the foreclosure of Colton's residential property.

Colton executed a promissory note and deed of trust in favor of MILA, Inc. d/b/a Mortgage

Investment Lending Associates, Inc.[2]  Mortgage Electronic Registration Systems, Inc.

("MERS"), acting as nominee for MILA and its successors and assigns, assigned the note and

deed of trust to U.S. Bank, as trustee.  Ocwen serviced the note.

In 2012 defendants invoked the power of sale under the deed of trust and conducted

a trustee's sale of Colton's property.  U.S. Bank purchased the property at foreclosure and

has since attempted to evict Colton and take possession.  Colton brought suit in state court

to nullify the foreclosure and prevent eviction.  Defendants removed the case to this court

and moved to dismiss Colton's original state-court petition under Fed. R. Civ. P. 12(b)(6).

The court granted defendants' motion, but because the case had been removed from state

court and Colton had filed his petition under state pleadings standards, the court granted him

leave to replead.

---

[1]Although the court recognizes that the case caption refers in error to defendant U.S. Bank National Association as "U.S. National Bank Association," neither side requests that the caption be amended.

[2]In deciding defendants' Rule 12(b)(6) motion, the court construes Colton's amended complaint in the light most favorable to him, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  In reciting the background facts the court relies solely on the amended complaint because neither party has attached the note, deed of trust, or other documentation.

Colton's amended complaint requests a judgment declaring, *inter alia*, that defendants lacked authority to foreclose.  He primarily argues that the assignment of the note and deed of trust from MERS to U.S. Bank was void because it violated terms of the Trust's PSA.  He also brings quiet title and trespass to try title claims, and he alleges that defendants violated Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a) (West 2002) by filing fraudulent foreclosure documents with the Dallas County Clerk.  Defendants move to dismiss each claim.

II

To survive defendants' motion to dismiss, Colton's amended complaint must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' it demands more

- 3 -

than 'labels and conclusions.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III

The court first considers Colton's request for a judgment declaring, essentially, that defendants lack any interest in the note or deed of trust, or the authority to take actions such as declaring a default and conducting a substitute trustee's sale.

### A

Colton's primary contention is that the assignment of the note and deed of trust from MERS to U.S. Bank, as trustee, is void because it did not comply with the PSA.[3] He maintains that U.S. Bank was not authorized to accept delivery of the assignment because

---

[3]Colton also argues, without citing any authority, that defendants lack authority to foreclose because they were not holders of the note. He alleges that the note was not indorsed when assigned and therefore was not properly negotiated. But negotiation of a note is unnecessary because a nonholder can obtain ownership of the note through an assignment, and an owner is entitled to enforce the note and foreclose on the collateral. *See Washington v. JP Morgan Chase*, 2013 WL 636054, at *7 (W.D. Tex. Feb. 20, 2013) ("'[E]ven if a person is not the holder of a note, he may still be able to prove that he is the owner and entitled to enforce the note, foreclose on collateral and obtain a deficiency judgment under common-law principles of assignment.'" (quoting *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App. 2004, no pet.))); *see also* Tex. Bus. & Com. Code Ann. § 3.203(b) (West 2002) ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course."); *id.* § 3.301 & cmt. (providing that "person entitled to enforce" negotiable instrument includes nonholder transferee of instrument). "[U]nder common-law principles of assignment, a party who fails to qualify as a 'holder' for lack of an indorsement may still prove that it owns the note." *Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 84 (Tex. App. 2012, no pet.) (holding that assignment of note and deed of trust established that assignee owned both and had standing to foreclose on note's collateral).

- 4 -

this occurred after the Trust's closing date: April 6, 2006. Colton alleges that MERS did not assign the note and deed of trust to U.S. Bank until June 2006. Colton also alleges that the assignment violated the PSA's provision specifying that the depositor GS Mortgage Securities Corporation ("GS Mortgage") would assign the mortgage loans to the Trust, because his loan was assigned by MERS. Relying on these purported violations of the Trust's terms, Colton contends the assignment was void under N.Y. Est. Powers & Trusts Law § 7-2.4 (McKinney's 2013) (providing that "every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void").[4] Colton reasons that, because the assignment was void, his mortgage loan did not become part of the Trust assets, and U.S. Bank, as trustee, therefore had no interest in the loan and could not foreclose.

Defendants do not respond directly to Colton's arguments or discuss whether the assignment from MERS to U.S. Bank complied with the Trust's terms. They instead maintain that Colton cannot challenge the assignment because he is neither a party to the PSA nor a third-party beneficiary. Colton replies that he has standing because the assignment is void, or, alternatively, as a third-party beneficiary of the PSA.

---

[4]The court questions whether New York law should apply to determine the assignment's validity, as Colton maintains, because the real property subject to the mortgage is located in Texas. But the court need not decide which state's law applies for purposes of determining whether the assignment was valid or whether Colton has standing to challenge the assignment, because Colton fails to state a plausible claim that the assignment violated the terms of the PSA.

B

Because doing so does not affect the outcome of defendants' motion to dismiss, the court will assume *arguendo* that Colton has standing to challenge defendants' authority to foreclose based on the allegedly invalid assignment of the note and deed of trust.[5]  Colton's argument relies on terms of the PSA, but he has neither attached a copy of the PSA to his amended complaint nor cited or quoted particular provisions of it.[6]  To properly understand and evaluate Colton's arguments, the court will take judicial notice of the PSA and related documents that the Trust filed with the Securities and Exchange Commission ("SEC").  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (holding that district court took appropriate judicial notice of publicly-available documents and transcripts produced by government agency that were matters of public record directly relevant to issue at hand) (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.")).[7]

---

[5]The court recognizes that district courts in this circuit have held that a debtor-homeowner lacks standing to challenge the assignment of a promissory note or deed of trust in defending against a nonjudicial foreclosure if the debtor is not a party, privy, or a third-party beneficiary to the assignment. *See, e.g., Kramer v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 3027990, at *5 (W.D. Tex. May 15, 2012) (holding that exception allowing non-party to challenge void, but not voidable, assignments does not apply in context of nonjudicial foreclosure).

Given the assumption that Colton has standing to challenge the validity of the assignment, the court need not reach the question whether Colton has adequately pleaded that he is a third-party beneficiary of the PSA.

[6]Colton does quote one portion of the PSA in arguing that he is a party or at least a third-party beneficiary of the PSA.

[7]The Trust's filings are available through the SEC's EDGAR database.

Colton's argument is premised on the theory that it was necessary for the Trust to be assigned his mortgage loan by the closing date.  But his loan was registered with MERS, and it appears that, for such loans, the Trust's terms did not require an assignment to transfer ownership to the Trust.

According to the Trust filings, the formation of the Trust proceeded as follows.  The sponsor, Credit-Based Asset Servicing and Securitization LLC ("CBASS"), accumulated a group of mortgage loans, which it agreed to transfer to the depositor, GS Mortgage, on the closing date.  *See* PSA §§ 2.01(a), 2.06-.07, and 2.10(h); *see also* Prospectus Supp. S-10 ("On the closing date, the sponsor will transfer the mortgage loans to the depositor and the trust will acquire the mortgage loans from the depositor.").  Then, on the closing date, GS Mortgage transferred this "trust fund" of mortgage loans to the trustee, U.S. Bank.  *See* PSA §§ 2.01, 2.10(h); *id.* at Art. I (defining "trust fund" as consisting of, *inter alia*, mortgage loans).  The PSA authorized U.S. Bank, as trustee, "to accept the sale, transfer, assignment, set over and conveyance by the Depositor to the Trust" of all interest in depositor GS Mortgage's trust fund, pursuant to § 2.01(a).  *See* PSA §§ 2.01(a), (c).  In § 2.01(a), entitled "Conveyance of Mortgage Loans," GS Mortgage agreed to transfer the trust fund to U.S. Bank, along with delivering or causing to be delivered a "mortgage file" that included documents such as the original mortgage note, endorsed; the original mortgage (i.e., the security interest); and an original assignment of the mortgage in blank or to U.S. Bank, as trustee.  *See id.* at § 2.01(a).  The PSA does not mention MERS or specify a different procedure for transferring mortgage loans that are recorded with MERS.  But Colton alleges,

- 7 -

as a purported example of noncompliance with the PSA's terms, that MERS, not GS Mortgage, executed the assignment to U.S. Bank.  Documents related to the PSA contain provisions that indicate that, for mortgages like Colton's that were recorded with MERS, it was unnecessary to assign the mortgage to U.S. Bank, as trustee, to transfer ownership to the Trust.

The Trust prospectus provides, similar to the PSA, that the depositor will transfer the mortgage loans and deliver to the trustee documents such as the original assignments of the mortgages.  But in the next paragraph the prospectus explains:

> *Notwithstanding the preceding two paragraphs, with respect to any mortgage loan that has been recorded in the name of [MERS] or its designee, no mortgage assignment in favor of the trustee (or custodian) will be required to be prepared or delivered.*  Instead, the Master Servicer will be required to take all actions as are necessary to cause the applicable trust fund to be shown as the owner of the related mortgage loan on the records of MERS for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by MERS.

Prospectus 51 (emphasis added).[8]  This language indicates that, for mortgages recorded with MERS, the Trust obtains ownership without being assigned the mortgage.

Accordingly, although the PSA specifies that GS Mortgage must deliver or cause to

---

[8]According to the prospectus, its purpose is to provide general information about the Trust, and the purpose of the prospectus supplement is to describe the specific terms of the securities offered.  *See* Prospectus Supp. S-3.  For purposes of this memorandum opinion and order, the court does not treat language of the prospectus and prospectus supplement as binding on the parties, but as persuasive authority useful for determining the terms of the Trust where the PSA (and the parties' arguments) lack specific detail.

be delivered to U.S. Bank a mortgage file for each loan that includes an original assignment, there appears to be an exception for mortgages recorded in the name of MERS. The existence of such an exception is further indicated in the mortgage loan purchase agreement between the sponsor, CBASS, and a mortgage loan seller, which is included as an exhibit to the PSA. In it, the seller agrees to provide CBASS with a mortgage file for each loan. *See* PSA Exh. P-2 at § 11(a). Notably, the mortgage file must include, "*except with respect to each MERS Designated Mortgage Loan*,[9] the original Assignment of Mortgage for each Mortgage Loan, in form and substance acceptable for recording." *Id.* at Exh. A(e) (emphasis added). This exception means that the mortgage file that CBASS receives does not include an assignment of a MERS-designated mortgage loan. In CBASS' mortgage loan purchase agreement with depositor GS Mortgage, CBASS agrees to deliver to U.S. Bank the mortgage file for each loan. This agreement requires that the mortgage file include "an original Assignment of Mortgage, in form and substance acceptable for recording," but it does not mention an exception for MERS mortgages. PSA Exh. P-1 at § 2.02(a)(iii). Although there is no explicit exception for MERS mortgages in this purchase agreement, it would create an inconsistency to read this agreement or the PSA as requiring CBASS to deliver an original assignment to U.S. Bank for such a mortgage when the seller was not obligated to provide CBASS an assignment. Moreover, it is reasonable that the PSA would not require that a

---

[9]The mortgage loan purchase agreement defines "MERS Designated Mortgage Loan" as a loan for which the seller (1) has designated or will designate MERS as the mortgagee of record, and (2) has designated or will designate a custodian (i.e., agent of the trustee) as the "investor" (i.e., beneficial owner of note) on the MERS system. *See* PSA Exh. P-2 at § 1.

MERS-designated mortgage loan be assigned to U.S. Bank to evidence transfer of ownership to the Trust.  The purpose of MERS is to avoid the task of preparing and recording separate assignments for each mortgage conveyance.  *See generally* Beau Phillips, *MERS: The Mortgage Electronic Registration System*, 63 Consumer Fin. L. Q. Rep. 262, 263 (2009).

Colton fails to acknowledge or rebut these indications that the Trust could obtain ownership of a MERS-designated mortgage loan even though it had not been assigned to U.S. Bank, as trustee.  Without further explanation of the Trust terms relating to MERS-designated mortgage loans, the court cannot reasonably infer that the absence of an assignment before the closing date violated the Trust terms or that U.S. Bank acted contrary to the Trust terms.

Nor do Colton's allegations support a reasonable inference that the assignment from MERS to U.S. Bank, as trustee, was void because it was executed after the closing date.  It is general practice for MERS to assign a mortgage to its beneficial owner some time *after* recording that owner in its system, because an assignment, while unnecessary to transfer ownership, may be a prerequisite to foreclosure under a particular state's law.  *See* Phillips, *supra*, at 265-66 (quoting MERS' Rules of Membership § 1(d) (2006), which states that, upon request, MERS will assign mortgage to beneficial owner seeking to foreclose in own name).  Colton does not allege that his mortgage was incorrectly transferred within the MERS system such that the Trust was not listed as the beneficial owner by the closing date.

And assuming timely designation of ownership within the MERS system,[10] Colton offers no reasons why it would be invalid for MERS to assign the note and deed of trust to that owner (the Trust) after the closing date.

Because Colton has not adequately pleaded how the treatment of his MERS-designated mortgage loan violated the Trust terms, and it appears from the judicially-noticed documents that assignment was unnecessary to transfer ownership, he has failed to state a plausible claim that defendants lacked authority to foreclose or a valid interest in his note and deed of trust.

C

Because Colton has failed to plead a plausible substantive claim to contest defendants' interest in the note and deed of trust or power to foreclose, the court declines in its discretion to entertain his request for a declaratory judgment.[11]

---

[10]The court assumes *arguendo* the correctness of Colton's premise that U.S. Bank, as trustee, had no authority to accept a new mortgage loan after the closing date.

[11]As this court has explained:

> The federal Declaratory Judgment Act does not create a substantive cause of action. A declaratory judgment action is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law. Federal courts have broad discretion to grant or refuse declaratory judgment. Since its inception, the DJA has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. The DJA is an authorization, not a command. It gives federal courts the competence to declare rights, but it does not impose a duty to do so.

IV

The court next considers Colton's quiet title and trespass to try title claims.[12]  Both claims rest on the assertion that defendants lacked a valid interest in Colton's property. Because the court has rejected Colton's grounds for contending that defendants' claim to the property is invalid, *see supra* § III(B), he has failed to state a plausible claim for relief. Accordingly, the court dismisses Colton's quiet title and trespass to try title claims.

V

Finally, the court considers Colton's claim under Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a).  Section 12.002(a) prohibits, in relevant part, presenting or using a document with knowledge that it was a fraudulent lien or claim against real property, with intent for the document to be given legal effect, and intent to cause financial injury.  *See id.*; *see also Perdomo v. Fed. Nat'l Mortg. Ass'n*, 2013 WL 1123629, at *4 (N.D. Tex. Mar. 18, 2013)

---

*Schrader-Scalf v. CitiMortgage, Inc.*, 2013 WL 625745, at *3 (N.D. Tex. Feb. 20, 2013) (Fitzwater, C.J.) (quoting *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *5 (N.D. Tex. Aug.16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013)).

[12]A suit to quiet title accords an equitable remedy and is used to remove a cloud on the owner's title.  *See Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App. 2012, pet. denied). It requires proof of three elements: "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Schrader-Scalf*, 2013 WL 625745, at *3 (citing *U.S. Nat'l Bank Ass'n v. Johnson*, 2011 WL 6938507, at *3 (Tex. App. Dec. 30, 2011, no pet.) (mem. op.)). A trespass to try title action is a statutory action that accords a legal remedy. *See Vernon*, 390 S.W.3d at 61.  It is "an action to recover the possession of land unlawfully withheld from an owner who has a right of immediate possession," *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. Civ. App. 1977, writ ref'd n.r.e.), and is "the exclusive remedy for resolving competing claims to property," *Parker v. Hunegnaw*, 364 S.W.3d 398, 401 (Tex. App. 2012, no pet.) (citing Tex. Prop. Code Ann. § 22.001 (West 2000)).

(Lynn, J.) (citing *Gray v. Entis Mech. Servs., L.L.C.*, 343 S.W.3d 527, 529-30 (Tex. App. 2011, no pet.)).

In support of this claim, Colton alleges that the following documents defendants filed with the Dallas County Clerk are fraudulent because they had no interest in Colton's property: the assignment from MERS to U.S. Bank, appointment of substitute trustee, notice of default, notice of acceleration, notice of substitute trustee's sale (if one were filed), and substitute trustee's deed.

Assuming *arguendo* that the type of documents filed are actionable under § 12.002(a),[13] the court has already rejected Colton's grounds for contending that defendants lacked a valid interest in his property.  He has therefore failed to state a plausible claim that, in filing documents, defendants violated § 12.002(a).

VI

Although the court is granting defendants' motion, and although the court has already given Colton one opportunity to amend, it will grant him one last opportunity to replead. "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs

---

[13]Federal district courts have interpreted § 12.002(a) as applying only to fraudulent documents purporting to *create* a lien or claim against property, but not a document like an assignment, which merely transfers an existing claim. *See Marsh v. JPMorgan Chase Bank, N.A.*, 888 F.Supp.2d 805, 812-14 (W.D. Tex. 2012) (interpreting § 12.002 and legislative history to make this *Erie* guess); *Perdomo*, 2013 WL 1123629, at *5 (collecting cases holding that filing assignment, notice of foreclosure, or substitute trustee's deed is not actionable).

advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Colton has not stated that he cannot, or is unwilling to, cure the defects that the court has identified.  The court will therefore grant him 30 days from the date this memorandum opinion and order is filed to file a second amended complaint. If he repleads, defendants may move anew to dismiss, if they have a basis to do so.

*    *    *

For the reasons set out, the court grants defendants' motion to dismiss and grants plaintiff leave to replead.

**SO ORDERED.**

May 10, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 14 -