IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ERNEST COLTON, JR., § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:12-CV-3584-D |
| VS. § | |
| § | |
| U.S. NATIONAL BANK § | |
| ASSOCIATION AS TRUSTEE FOR § | |
| THE GSAMP TRUST 2006-HE2, et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

In this removed case arising from the foreclosure on the residential property (the "Property") of plaintiff Ernest Colton, Jr. ("Colton") by defendants U.S. Bank National Association ("U.S. Bank"), as trustee for the GSAMP Trust 2006-HE2 Mortgage Pass-Through Certificates, Series 2006-HE2 (the "Trust"), and Ocwen Loan Servicing, LLC ("Ocwen"), defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim on which relief can be granted. For the reasons that follow, the court grants the motion in part and denies it in part.

I

In 2006 Colton executed a promissory note ("Note") and deed of trust ("DOT") on the Property in favor of MILA, Inc. d/b/a Mortgage Investment Lending Associates, Inc.[1]

---

[1]In deciding defendants' Rule 12(b)(6) motion, the court construes Colton's amended complaint in the light most favorable to him, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor. *See, e.g., Lovick v. Ritemoney*

Assignments of the Note and DOT were later filed with the Dallas County Clerk, reflecting the assignment from Mortgage Electronic Registration System ("MERS"), as "Nominee for Lender and Lenders Successors and Assigns," to U.S. Bank, as trustee for the Trust. In 2012 U.S. Bank foreclosed and purchased the Property at foreclosure. A foreclosure sale deed was later filed with the Dallas County Clerk. Since that time, U.S. Bank has claimed title to the Property and has attempted to evict Colton.

Colton alleges that defendants lacked authority to declare a default, accelerate the debt, appoint a substitute trustee, conduct a substitute trustee's sale, acquire the Property at a substitute trustee's sale, take title to the Property through a substitute trustee's deed, or evict Colton and all occupants. These premises serve as the grounds for his declaratory judgment and quiet title claims.

Colton relies first on the terms of the Trust's Pooling and Servicing Agreement ("Trust PSA"). The Trust was created and organized under the Trust PSA, which contains myriad provisions regarding the creation of the Trust, the manner in which Trust properties and documents are to be exchanged, and how the Trust is to be managed.[2] Colton alleges that (1) the Note was not timely conveyed to the Trust/Trustee, as required by the Trust PSA;

---

*Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). In reciting the background facts, the court relies solely on the amended complaint because neither party has attached the Note, DOT, or other documentation.

[2]For the reasons stated in its previous decision, *see Colton v. U.S. National Bank Ass'n*, 2013 WL 1934560, at *2 (N.D. Tex. May 10, 2013) (Fitzwater, C.J.), the court takes judicial notice of the Trust PSA. The Trust PSA and related filings are available through the SEC's EDGAR database.

(2) the Note and DOT did not follow the chain of title required by the PSA, which allegedly requires the mortgage documents to pass from the "seller"—Credit-Based Asset Servicing and Securitization LLC ("CBASS")—to the "depositor"—GS Mortgage Securities Corp. ("GS Mortgage")—to the Trust; and (3) both CBASS and GS Mortgage failed to deliver the mortgage file to U.S. Bank, in compliance with § 2.01 of the PSA.

Colton maintains second that the provisions of the DOT exclusively reserve to the "Lender" the authority, *inter alia*, to accelerate the debt and foreclose on the Property, as defined in the DOT. Colton cites a section of the DOT that defines "Lender" as "any holder of the Note who is entitled to receive payments under the Note." 2d Am. Compl. ¶ 6. He maintains that, when the Note and DOT were assigned from MERS to defendants, the Note was not indorsed, and that a copy of the Note provided by Ocwen's counsel to Colton contained no indorsement. Colton posits that the Note has never been negotiated away from the originator, MILA. He maintains that, because defendants are not holders of the Note, they are not the "Lender," as defined in the DOT, and they therefore lack authority to enforce the terms of the DOT.

Defendants move to dismiss, contending that Colton does not have standing to challenge the assignment of the Note and DOT or to contest the PSA. They also argue that Colton has failed to state plausible claims for declaratory judgment or to quiet title.

II

To survive defendants' Rule 12(b)(6) motion, Colton must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted (quoting Rule 8(a)(2)).

III

The first ground on which Colton relies for his declaratory judgment and quiet title claims is that defendants breached the Trust PSA.

A

Defendants contend that Colton lacks standing to assert noncompliance with the Trust PSA because he is not a party to, or a third-party beneficiary of, the Trust PSA. They cite cases holding that a plaintiff does not have standing to sue based on alleged violations of a PSA to which he is not a party, or to which the plaintiff is not a third-party beneficiary. *See,*

*e.g., Bittinger v. Wells Fargo Bank, NA*, 744 F.Supp.2d 619, 625-26 (S.D. Tex. 2010) (holding that party lacked standing "because his loan was 'bundled' and sold or transferred under [a PSA]"). Colton alleges that he is a party to, or a third-party beneficiary of, the Trust PSA, which he asserts is governed by New York law.

B

Colton alleges that he is a party to the Trust PSA because the Note was "presumably included" in the "corpus of the trust." 2d Am. Compl. ¶ 33. But he cites no authorities that hold that the incorporation of a note into a mortgage-backed trust makes the maker of the note a party to the trust itself. Moreover, the Trust PSA's terms evidence that Colton is not a party. The Trust PSA lists the parties, including GS Mortgage, Litton Loan Servicing LP ("Litton Loan"), CBASS, U.S. Bank, and the Trust. It includes a preamble that states that the Trust PSA is an agreement among these five parties. The Trust PSA provides that it is agreed to among "the parties hereto," referencing the five parties listed immediately above. Trust PSA at 4. It is signed by representatives of GS Mortgage, Litton Loan, CBASS, and U.S. Bank, as trustee of the Trust. The court therefore concludes that Colton has not plausibly pleaded that he is a party to the Trust PSA.

C

Colton also contends that he is a third-party beneficiary of the Trust PSA. He cites several provisions of the Trust PSA to show that he is beneficiary, including those that require the servicer to ensure that each mortgaged property carries hazard insurance. Under New York law, "only an intended beneficiary of a contract may assert a claim as a third-party


beneficiary." *Mortise v. United States*, 102 F.3d 693, 697 (2d Cir. 1996); *see also Rodriguez v. U.S. Bank, N.A.*, 2013 WL 3146844, at *7 (W.D. Tex. June 18, 2013) (holding under New York law that a third-party must show the contract renders "immediate, rather than incidental" benefits); *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 2013 WL 1285160, at *3 (S.D.N.Y. Mar. 28, 2013) ("[A] non-party to a PSA lacks standing to assert noncompliance with the PSA . . . unless the non-party is an intended (not merely incidental) third party beneficiary of the PSA."). Texas courts apply the same rule. *See Resolution Trust Corp. v. Kemp*, 951 F.2d 657, 662 (5th Cir. 1992); *see also Preston v. Seterus, Inc.*, 931 F.Supp.2d 743, 753 (N.D. Tex. 2013) (Lindsay, J.) (citing *Kemp*).

Colton's allegations are insufficient to plead a plausible claim that he is a third-party beneficiary of the Trust PSA under either New York or Texas law. The same provision that requires the servicer to "cause to be maintained . . . fire and hazard insurance" also provides that "[a]ll such [insurance] policies shall be endorsed with standard mortgagee clauses with loss payable to the Servicer." Trust PSA § 3.13. Provisions like the ones Colton cites are intended to protect against losses by the Trust and its investors, not to benefit mortgagors like Colton. *Cf. Reinagel v. Deutsche Bank Nat'l Trust Co.*, ___ F.3d ___, 2013 WL 5832812, at *5 n.29 (5th Cir. Oct. 29, 2013) (stating that "a PSA is executed to benefit the investors who buy securities backed up by the mortgage pool," and that "[u]nsurprisingly, courts invariably deny mortgagors third-party status to enforce PSAs"). Moreover, the Trust PSA explicitly provides that "[t]he Swap Provider shall be deemed a third-party beneficiary of [the Trust PSA]." Trust PSA § 10.12. But the Trust PSA does not provide that any other

parties—including Colton—hold this status. It is not clear that Colton stands to benefit in any way from the Trust PSA. But even if he would benefit from some of its provisions, he is at most an "incidental" beneficiary. *Rajamin*, 2013 WL 1285160, at *3. The court therefore concludes that Colton has failed to plead under New York or Texas law a plausible claim that he is a third-party beneficiary of the Trust PSA.

Because Colton has failed to plausibly plead that he is a party to, or third-party beneficiary of, the Trust PSA, the court holds that he lacks standing to challenge the assignment of the Note and DOT on the ground that defendants failed to comply with the Trust PSA.

IV

The second ground on which Colton relies for his declaratory judgment and quiet title claims is that defendants never obtained the status of "Lender," as defined in the DOT. He posits that they were not authorized under the DOT to foreclose on the Property or otherwise enforce the DOT's terms because the DOT reserved such authority for the "Lender" alone.

A

Defendants maintain that Colton lacks standing to contest the assignments because he is not a party to the assignments. The court agrees. "Courts in this circuit have repeatedly held that borrowers do not have standing to challenge the assignment of their mortgages because they are not parties to those assignments." *Garrett v. HSBC Bank USA, N.A.*, 2012 WL 1658796, at *2 (N.D. Tex. May 11, 2012) (Fitzwater, C.J.) (citing cases); *see also DeFranceschi v. Wells Fargo Bank, N.A*, 837 F.Supp.2d 616, 623 (N.D. Tex. 2011) (Means,

J.); *Eskridge v. Fed. Home Loan Mortg. Corp.*, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011).

B

Colton does have standing, however, to challenge defendants' authority to enforce the DOT. Colton is a party to the DOT, which he executed in favor of MILA. Courts determining whether a party has the authority to foreclose have often "examined whether the note or deed of trust permitted the assignment and foreclosure." *Metcalf v. Deutsche Bank Nat'l Trust Co.*, 2012 WL 2399369, at *5 (N.D. Tex. June 26, 2012) (Fitzwater, C.J.) (collecting cases where courts examined deed of trust). Moreover, Texas courts require "strict adhere[nce]" with the terms of the deed of trust. *Hous. First Amer. Sav. v. Musick*, 650 S.W.2d 764, 768 (Tex. 1983). Because neither side has submitted a copy of the DOT, the court accepts as true Colton's well-pleaded allegations regarding the DOT's terms and limitations.

The court recognizes that "Texas courts have routinely concluded that a party does not have to be a holder of the mortgage note prior to conducting a non-judicial foreclosure." *Estate of Falk v. Wells Fargo Bank, N.A.*, ___ Fed. Appx. ___, 2013 WL 5614248, at *2 (5th Cir. Oct. 15, 2013) (per curiam). The "assignee of a mortgage does not have to be a holder of the note to foreclose." *Id.* But Colton alleges that the DOT confers exclusively on the "Lender" the authority to accelerate the debt, foreclose on his property, and conduct a foreclosure sale, and that the DOT defines the term "Lender" as the holder of the Note. In other words, although Texas law does not require a party to be a holder of a note in order to

- 8 -

foreclose, Colton alleges that the DOT *does require* defendants to be the holder of the Note to enforce the DOT. Colton also asserts that MILA is the holder of the Note because the Note has never been negotiated away from MILA. Accepting Colton's allegations as true, MILA is the only party authorized to enforce the DOT, and defendants lacked the power to do so.

The court holds that Colton has pleaded plausible claims for declaratory judgment and quiet title based on the second ground.

* * *

Accordingly, for the reasons explained, defendants' motion to dismiss is granted in part and denied in part.

**SO ORDERED**.

November 4, 2013.

                                                SIDNEY A. FITZWATER
                                                CHIEF JUDGE